**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JOEL AGUIRRE,

            Petitioner,

vs.

UNITED STATES OF AMERICA,

            Respondent.

No. C 10-4128-MWB
(No. CR 07-4073-MWB)

**MEMORANDUM OPINION AND
ORDER RE PETITIONER'S
SECTION 2255 MOTION**

———————————

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A. The Criminal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B. The § 2255 Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    A. Standards For § 2255 Relief . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B. Procedural Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1. Need for an evidentiary hearing . . . . . . . . . . . . . . . . . . . 10
        2. Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    C. Ineffective Assistance Of Counsel . . . . . . . . . . . . . . . . . . . . . 12
        1. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2. Failure to conduct reasonable investigation . . . . . . . . . . . . 15
        4. Inadequate cross examination at sentencing hearing . . . . . . 23
        5. Inadequate request for second psychological evaluation . . . . 25
        6. Failure to fully present mental health issues . . . . . . . . . . . 28
        7. Issues waived . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        8. Failure of probation officer . . . . . . . . . . . . . . . . . . . . . . 30
        9. Demeanor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    D. Certificate Of Appealability . . . . . . . . . . . . . . . . . . . . . . . . . 32

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## I.  INTRODUCTION

This case is before me on petitioner Joel Aguirre's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1), filed on December 20, 2010, as amended (Civ. docket no 26), on August 2, 2011.  Aguirre claims that the first attorney who represented him at the trial level provided ineffective assistance of counsel by violating the attorney/client privilege and that his second trial counsel provided him with ineffective assistance of counsel in several ways.  The respondent denies that Aguirre is entitled to any relief on his claims.

### A.  The Criminal Proceedings

On October 26, 2007, Aguirre was charged by a one-count Indictment (Crim. docket no. 1).  The Indictment charged Aguirre with conspiracy to distribute, and possession with intent to distribute, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 5 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), all in violation of 21 U.S.C. § 846.  *See* Crim. docket no. 1.  On October 30, 2007, Aguirre appeared in front of then Chief United States Magistrate Judge Paul A. Zoss to plead not guilty to the Indictment.  *See* Crim. docket no. 10.

On March 18, 2008, Aguirre appeared before Judge Zoss to change his plea to guilty to the Indictment.  *See* Crim. docket no. 42.  Judge Zoss filed a Report And Recommendation Concerning Plea Of Guilty (Crim. docket no. 45), on March 18, 2008,

recommending that Aguirre's plea of guilty be accepted.  I entered an Order Concerning Magistrate's Report And Recommendation Regarding Defendant's Guilty Plea (Crim. docket no. 46) on April 2, 2008, thereby accepting Aguirre's guilty plea to the Indictment.

Aguirre's trial counsel filed a Motion To Withdraw (Crim. docket no. 52), on May 20, 2008.  Aguirre filed a *Pro Se* Motion for New Attorney (Crim. docket no. 56), on May 21, 2008.  On June 4, 2008, Aguirre appeared before Judge Zoss for a hearing on both pending motions.  *See* Crim. docket nos. 57 & 62.  After a hearing on the matter, Judge Zoss denied the motions and did not appoint a new attorney to represent Aguirre. *See* Crim. docket no. 62.

On June 9, 2008, Aguirre, by counsel, filed a Motion For Downward Departure And Variance (Crim. docket no. 65), accompanied by a supporting brief.  Aguirre argued that he should benefit from a downward departure or variance because he had an extremely turbulent and violent childhood and because he had a significant history of psychological problems, beginning at age eight and continuing through to the date of sentencing.  *See* Crim. docket no. 65-2, at 2-4.  Relying on Section 5K2.13 of the United States Sentencing Guidelines, Aguirre specifically argued that a downward departure was appropriate for diminished capacity.  *See* Crim. docket no. 65-2, at 5.

On June 10, 2008, by counsel, Aguirre filed a Sentencing Memorandum (Crim. docket no. 68), arguing against a two-point enhancement for the possession of a firearm. Aguirre argued that there was no evidence establishing a nexus between a witness's statement that she had seen Aguirre with a gun and any drug crimes committed by Aguirre. *See* Crim. docket no. 68, at 1-3.  Aguirre also argued that the witness's statement was uncorroborated and unreliable.  *See* Crim. docket no. 68, at 1-3.

On June 10, 2008, the government filed a Motion for Upward Departure (Crim. docket no. 69), with an attached brief in support.  The Government also filed a Sentencing Memorandum (Crim. docket no. 71), on June 10, 2008.

Aguirre, by counsel, filed a Motion For Psychological Evaluation (Crim. docket no. 75), on June 11, 2008.  I entered an Order (Crim. docket no. 78), on June 17, 2008, granting Aguirre's Motion For Psychological Evaluation.

Aguirre filed a *Pro Se* Motion To Withdraw (Crim. docket no. 101), seeking the removal of his attorney and seeking new counsel, on October 6, 2008.  On October 7, 2008, Aguirre's counsel filed a Motion To Withdraw (Crim. docket no. 102).  After a hearing on October 23, 2008, Judge Zoss granted both motions and ordered that new counsel be appointed for Aguirre.  *See* Crim. docket no. 107.

Aguirre, by new counsel, filed a Motion For Second Psychiatric Evaluation (Crim. docket no. 122), on December 31, 2008.  I entered an Order (Crim. docket no. 123), on December 31, 2008, denying Aguirre's Motion For Second Psychiatric Evaluation.

On February 24, 2009, Aguirre, by counsel, filed a Sentencing Memorandum (Crim. docket no. 129), arguing that the drug quantity involved would establish a base level of 32 and arguing that there should be no upward enhancement for a weapon.  *See* Crim. docket no. 129 at 6-7.  Aguirre also argued that he should qualify for an additional two-level reduction "for a mitigating role downward departure under U.S.S.G. §3B1.2(b)."  *See* Crim. docket no. 129 at 8.  Further, Aguirre, pursuant to 18 U.S.C. §3553(a), argued for a "20% downward variance because of the almost impossible conditions he grew up under."  *See* Crim. docket no. 129 at 10-11.

Aguirre appeared before me on March 5, 2008, for a sentencing hearing.  *See* Crim. docket no. 139.  Both parties stipulated to a base offense level of 32 based on drug quantity.  Sent. Trans. at 2.  Aguirre's objection to a 2-level increase for possession of a

dangerous weapon under United States Sentencing Guideline 2D1.1(b)(1), his motion for downward departure based on diminished capacity under United States Sentencing Guideline 5K2.14, his motion for a downward variance, his motion for downward departure based on his role in the offense, and the government's motion for upward departure for substantial underrepresentation of criminal history, all remained contested at the time of sentencing. Sent. Trans. at 2-3.

Although Aguirre had not specifically objected to his role on the merits, as scored in the PSIR, but only raised his objection in his brief, I did not deem that his objection was waived, and without objection of the government, allowed Aguirre to present evidence with regard to his role in the offense. Sent. Trans. at 7-8. After considering the evidence, I determined that Aguirre was not just a minor courier because he had engaged in drug negotiations about quantity and price and the number of times the exchanges took place and had a scale and actually weighed out the drugs for delivery. Sent. Trans. at 41-42.

I then determined that I would treat Aguirre's motion, based on his mental capacity and unfortunate childhood, as both a motion for a downward departure and a motion for a variance, even though it wasn't clear from the documents filed in his case whether he intended his request to be for a variance or a departure. Sent. Trans. at 45-46. As such, I first took under consideration what I construed as a motion for downward departure. Sent. Trans. at 47-48. After reviewing evidence and hearing testimony and arguments by the parties, I denied Aguirre's motion for downward departure based on diminished capacity because Aguirre had not proved that there was a connection between any of his psychological infirmities and his criminal activities. Sent. Trans. at 47-48.

I granted the government's motion for upward departure based on a substantial underrepresentation of Aguirre's criminal history, finding that Aguirre had a propensity for violence and assaultive behavior coupled with a history of recidivism. Sent. Trans. at

51.  As a result, I departed upward to a criminal history category of 6.  Sent. Trans. at 52. I also held, in the alternative, that in the event my decision to depart upward was reversed on appeal, I would vary upward based on 18 U.S.C. § 3553(a) factors, to whatever sentence I ultimately imposed.  Sent. Trans. at 52.  I found that Aguirre's offense level was 31, with a criminal history of 6.  Sent. Trans. at 52.  This established Aguirre's guideline range as 188 to 235 months.  Sent. Trans. at 52.

Because I had determined to construe Aguirre's motion for a downward departure as both a motion for a downward departure and a motion for a variance, I then considered the motion for a variance.  Sent. Trans. at 52-53.  I found that a variance was not appropriate in this case, because, while there were some substantial mitigating factors present, they were clearly outweighed by Aguirre's history of assaultive behavior.  Sent. Trans. at 55-56.  I determined that the appropriate sentence, in Aguirre's case, after consideration of the 18 U.S.C. § 3553(a) factors, was at the high end of the guideline range.  Sent. Trans. at 58  I sentenced Aguirre to 235 months.  Sent. Trans. at 58.

Aguirre filed a Notice of Appeal on March 10, 2009, challenging his sentence on the grounds that I had erred by (1) applying a two-point level increase for possessing a dangerous weapon; (2) denying a minor-role reduction; (3) departing upward from a Category 5 to a Category 6 criminal history; and (4) denying a downward departure or a variance based on Aguirre's diminished capacity.  *See* Crim. docket no. 151.  The Eighth Circuit Court of Appeals issued its Opinion on December 31, 2009, affirming Aguirre's sentence.  *See* Crim. docket no. 151.

### B.  The § 2255 Motion

On December 21, 2010, Aguirre filed a *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 1).  On

May 20, 2011, counsel appointed to represent Aguirre on his § 2255 Motion filed an Amended Motion to Vacate, Set Aside or Correct Sentence (Civ. docket no. 16). However, on May 25, 2011, Aguirre filed a *Pro Se* Motion for New Attorney; *Pro Se* Motion to Withdraw and Terminate the § 2255 Motion filed by counsel (Civ. docket no. 18). On May 31, 2011, Aguirre filed a *Pro Se* Supplement to his Motion for appointment of New Attorney and Motion to Withdraw and Terminate the previous § 2255 Motion filed by withdrawn counsel (Civ. docket no. 19). Again, on June 2, 2011, Aguirre filed a *Pro Se Pro Se* Supplement to his Motion for appointment of New Attorney and Motion to Withdraw and Terminate the previous § 2255 Motion filed by withdrawn counsel (Civ. docket no. 20). On June 6, 2011, I entered an Order (Civ. docket no. 21) granting Aguirre's motion to terminate the services of his § 2255 counsel, denying Aguirre's request for newly-appointed counsel, granting Aguirre's motion to withdraw his amended § 2255 motion (Civ. docket no. 11), his second amended § 2255 motion (Civ. docket no. 16) and all supporting briefs attached to those motions. *See* Civ. docket no. 21. I then gave Aguirre leave to file an amended § 2255 Motion and supporting brief. *See* Civ. docket no. 21. Aguirre filed his *Pro Se* Amended Motion to Vacate, Set Aside or Correct Sentence (Civ. docket no. 25) ("Amended Motion"), on June 27, 2011. The respondent filed a Response And Memorandum In Support Of Government's Response To Defendant's Motion Under 28 U.S.C. § 2255 (Civ. docket no 27), on August 2, 2011. Aguirre filed a *Pro Se* Reply Brief (Civ. docket no. 29), on October 4, 2011. On October 25, 2011, the respondent filed a Government's Hearing Memorandum (Civ. docket no. 32).

## II. LEGAL ANALYSIS

### A. Standards For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States,* 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States.").  Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780.  One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme

Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37

(2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Aguirre's claims for § 2255 relief.

## B.  Procedural Matters

### 1.    Need for an evidentiary hearing

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. § 2255.  On the other hand, an evidentiary hearing is necessary where "'the court is presented with some reason to question the evidence's credibility.'" *Kingsberry v. United States*, 202 F.3d 1030, 1033 (8th Cir. 2000) (quoting 1 Liebman and Hertz, Federal Habeas Corpus Practice and Procedure § 19.5, at 723 (3rd ed. 1998); *id.* at 1033 n.6 (also quoting 28 U.S.C. § 2254, Rule 7 advisory committee's note (1994), made applicable to § 2255 by reference, as stating, "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful."); *see also Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001) (holding that the district court abused its discretion in not holding an evidentiary hearing on a § 2255 claim of failure to call alibi witnesses, because the record before the district court "contained sharply conflicting evidence").  Even though ineffective assistance

of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro*, 538 U.S. at 500, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion.   In this case, I conclude that no evidentiary hearing is required on any issue because the record conclusively shows that Aguirre's allegations either cannot be accepted as true, because they are contradicted by the record, or because, even if Aguirre's allegations were accepted as true, they would not entitle him to relief. *Buster*, 447 F.3d at 1132.   "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (citing *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (internal quotations and citation omitted)).

### 2.    *Procedural default*

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993).   "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel."   *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). To the extent that I can construe Aguirre's claims as claims of ineffective assistance of counsel, I will consider them on the merits.

### C. *Ineffective Assistance Of Counsel*

*1.    Applicable standards*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

12

result.'"  *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added).  To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

As to the deficient performance prong, "The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689).  Moreover,

> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," [*Strickland*, 466 U.S. at 689], the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.,* at 690, 104 S. Ct. 2052.  To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.,* at 688, 104 S. Ct. 2052.  The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.,* at 690, 104 S. Ct. 2052.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403.  To put it another way,

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell

> below an objective standard of reasonableness." [*Strickland,*]
> 466 U.S. at 688, 104 S. Ct. 2052. . . . The challenger's
> burden is to show "that counsel made errors so serious that
> counsel was not functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." *Id.,* at 687, 104 S. Ct.
> 2052.

*Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (quoting *Richter*). There are two substantial impediments to making the required showing of deficient performance. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" *King*, 595 F.3d at 852-53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

The second prong of the *Strickland* analysis requires the challenger to prove prejudice. *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (citing *Strickland*, 466 U.S. at 691-92). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court has explained,

> "The defendant must show that there is a reasonable
> probability that, but for counsel's unprofessional errors, the
> result of the proceeding would have been different."
> [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052. "A reasonable
> probability is a probability sufficient to undermine confidence
> in the outcome." *Ibid.* That requires a "substantial," not just
> "conceivable," likelihood of a different result. *Richter*, 562
> U.S., at –––––, 131 S. Ct., at 791.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. However, even where the petitioner "suffered prejudice from his lawyer's error," he is not entitled to § 2255 relief unless the lawyer's error was also the result of conduct that was professionally unreasonable at the time. *King*, 595 F.3d at 852-53.

The two prongs of the "ineffective assistance" analysis are usually described as sequential. Thus, if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). On the other hand, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

### 2.    *Failure to conduct reasonable investigation*

Aguirre argues that his second trial counsel provided ineffective assistance by failing to conduct a reasonable investigation into whether the enhancement for possession of a weapon was proper in his case. Amended Motion at 3. Aguirre claims that a proper investigation would have demonstrated that the enhancement was not supported by the

evidence.  Amended Motion at 3.  Respondent argues that the evidence that Aguirre claims should have been introduced wasn't credible and wasn't relevant because it would not have affected application of the gun enhancement in this case and would have made no difference to Aguirre's sentence.  Response at 8 and 13.

Aguirre was convicted of being a felon in possession of a firearm and simple assault in Buena Vista County, Iowa, on April 23, 2007.  *See* PSIR, at Para. 49.  Aguirre claims that his second trial counsel failed to understand and properly explain the circumstances of this felon-in-possession and assault conviction and argues that this failure negatively affected the calculation of Aguirre's criminal history, his guideline range, his motion for downward variance, and the gun enhancement in his case.  Brief in Supp. of Amended Mot. at 1.

Aguirre argues that his second trial counsel should have explained to the court that the assault did not involve Aguirre "pistol whipping" another individual.  Brief in Supp. of Amended Mot. at 7.  Aguirre claims that this mis-characterization of the circumstances giving rise to the conviction provided the basis for the denials of all of his efforts to reduce his sentence.  Brief in Supp. of Amended Mot. at 6-7.  Aguirre asserts that if his second trial counsel had interviewed Aguirre's mother and girlfriend, he would have realized that they should have been called to testify that the incident that led to Aguirre's conviction for possession of a firearm by a felon and assault simply involved Aguirre taking a gun away from his mother's drunken boyfriend in order to ensure the safety of others present at the time, and did not involve a "pistol whipping."  Brief at 8.  In further support of this version of events, Aguirre attached an affidavit to his motion, from the attorney who defended him in the prior case.  By affidavit, the attorney asserts that, in the process of defending Aguirre, he interviewed the victim who also affirmed that Aguirre simply took the gun from him in order to protect others.  Aff. at 2-3.

16

Respondent asserts that Aguirre's second trial counsel engaged in professionally reasonable conduct by determining that no further investigation of this incident was necessary. First, respondent claims that Aguirre never informed his second trial counsel that the facts of his prior conviction were incorrect, and, in fact, remained silent himself about any supposed incorrect understanding of such facts, during his sentencing hearing. Response at 12. Respondent also argues that it simply isn't believable that Aguirre did not strike another individual with the gun because that version of the facts differs drastically from the initial statements of the victim. Response at 12. Respondent states that the documents filed in support of the criminal complaint, including a statement from the victim, state that Aguirre struck the victim in the face with a gun. Response at 12. Further, the respondent notes that not only did Aguirre plead guilty to possession of a firearm, but also to simple assault. Response at 11. Respondent argues that, in light of the documents supporting the conviction, it isn't now credible for the victim and Aguirre's mother and girlfriend to claim that Aguirre had not hit another individual in the face with a gun on that occasion. Response at 11.

Respondent also asserts that Aguirre cannot establish that he was prejudiced by his second trial counsel's failure to recast the circumstances of Aguirre's prior conviction. Response at 13. First, respondent argues, even if the prior conviction that Aguirre complains about had not been included in his criminal history, Aguirre's guideline range would have been unchanged. Response at 13. Further, respondent argues, the court could reasonably have found sufficient justification for departing upward to reach the same sentence, even without consideration of the prior conviction. Response at 13. Also, respondent claims that Aguirre misunderstands that the gun enhancement in his case was based on the possession of a weapon, not during the prior crime, but during the commission of the instant offense. Response at 8. The possession of a gun during a prior

crime, respondent asserts,  had nothing to do with application of the gun enhancement in this case.  Response at 8.

"[F]ailing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994).  "There is, however, no per se rule that failure to interview witnesses constitutes ineffective assistance." *Sanders v. Trickey,* 875 F.2d 205, 209 (8th Cir. 1989).  Courts are to "consider all circumstances when evaluating the reasonableness of an investigation." *Ortiz v. United States*, 664 F.3d 1151, 1172 (8th Cir. 2011) (citing *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)).  Allegations of a failure to investigate must be "supported by specific allegations, such as the failure of counsel to interview witnesses, to seek factual information in the possession of the government, or to otherwise explore all avenues leading to facts relevant to guilt and degree of guilt or penalty." *United States v. Johnson*, 582 F.2d 1186, 1188 (8th Cir. 1978) (citing *McQueen v. Swenson*, 498 F.2d 207, 215-16 (8th Cir. 1974)).  Additionally, in order to establish that he was prejudiced, Aguirre must show that there is "a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (citing *Garrett v. United States*, 78 V.3d 1296, 1301 (8th Cir. 1995)).  Where the record contains "independent support—notwithstanding counsel's [alleged] failure" to support the sentence, the claimant has not shown prejudice.  *See Champion v. United States*, 319 Fed. Appx. 443, 446 (8th. Cir. 2009) (defendant could not show prejudice where record contained independent support for the court's finding that the defendant was the leader of a conspiracy).

Aguirre received a two-level increase for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a gun during a drug transaction that

was part of the current conspiracy.  Sent. Trans. at pg. 43.  Aguirre has not provided any evidence that these witnesses, his mother, his girlfriend, or the victim, had any information that was relevant to the gun possession that led to application of the enhancement in this case; they simply had testimony regarding whether or not he generally carried a weapon. Therefore, his attorney did not perform deficiently by failing to interview them with regard to the facts that led to a prior conviction involving a weapon.

Likewise, Aguirre has not indicated how any testimony from either his girlfriend or his mother would have had any affect on his criminal history or his guideline range, since, regardless of their alleged current statements, the conviction still stands and Aguirre would still have received the same allocation of criminal history points.  *See*, PSIR, para 49.

However, Aguirre argues, additionally, that his second trial counsel should have interviewed these witnesses with regard to the prior incident because their testimony should have been presented in support of his motion for a downward departure, which I had construed as both a motion for a downward departure and as a motion for a variance. Brief in Supp. of Amended Mot. at 7.  He argues that if his attorney had interviewed his girlfriend, his mother, and the victim, his attorney would have discovered that Aguirre had not "pistol whipped" the victim.  Brief in Supp. of Amended Mot. at 7.  Aguirre argues that if I had not believed that he had "pistol whipped" the victim in the one prior crime, I would not have determined that he had a tendency for violence and would not have denied his motion.  Brief in Supp. of Amended Mot. at 7.

All of the proposed testimony that would have been offered to support Aguirre's position that he had not "pistol whipped" the victim of the prior crime is in direct and startling contrast to statements made by the victim in conjunction with the filing of the complaint in the case.  *See* PSIR, para 49.  Given the supporting documents filed in the

19

criminal case, and the fact of the conviction itself, the statements claiming that Aguirre never hit the victim with a gun during the prior incident are simply not credible, and second trial counsel's conduct here, in deciding not to pursue any further investigation into these statements "fell within the wide range of reasonable professional assistance." *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005).

Even if I were to find, and I do not here do so, that Aguirre's second trial counsel performed deficiently by not further investigating what Aguirre's mother, girlfriend, and victim of the prior crime now had to say about the incident that gave rise to the prior conviction, Aguirre has not established that the testimony he states would have been offered by these witnesses would have been likely to change the outcome of his sentencing. Aguirre argues that I would not have denied his motion, construed as both a motion for a downward departure and as a motion for a variance, if I had heard this testimony. Brief in Supp. of Amended Mot. at 7. I am convinced by the record, however, that I would have denied Aguirre's motion for downward departure, construed as both a motion for a downward departure and a downward variance, even if I had not characterized Aguirre's prior actions as having "pistol whipped" the victim in the prior conviction. I denied a downward departure and a downward variance after consideration of Aguirre's entire prior criminal history, which consisted of a "longstanding history of violence starting with the murder conviction as a child right up until he's on pretrial supervision and assaulting another inmate." Sent. Trans. at pg. 55.

Because Aguirre has not established either that his second trial counsel performed deficiently or that he was prejudiced by an alleged failure to properly investigate and interview witnesses, Aguirre's claim, on this ground, fails.

20

### 3.   *Failure to subpoena witnesses for sentencing hearing*

Aguirre asserts that his second trial counsel provided ineffective assistance by failing to subpoena Lisa Kenny, Moises Gonzalez, Eric Sandoval, Ashley Moller, Norma Aguirre, Lorena Salazar, and James A. Schall for his sentencing hearing.  Brief in Supp. of Amended Mot. at 10.  Aguirre additionally claims, in his reply brief, that agent Chris Nissen should have been subpoenaed.  *Pro Se* Reply Brief, at 16.  Aguirre argues that testimony from these witnesses would have rebutted the applicability of the gun enhancement.  Amended Motion at 3.

Respondent argues that second trial counsel's decision not to subpoena the first three witnesses was a strategic one based on the belief that calling them could have caused more damage to Aguirre's case than not calling them.  Response at 18.  Further, the respondent argues that even if these witnesses had been called, their testimony would not have outweighed the credibility of Jennifer Ramey who testified that she had seen Aguirre with a gun during a drug transaction.  Response at 19.  Respondent further asserts that Aguirre waived this claim, with regard to agent Nissen, by raising it for the first time in his reply.  Hearing Memo at 2.

First, with regard to agent Nissen, although Aguirre does raise this claim with regard to agent Nissen for the first time in his *Pro Se* Reply Brief, I am not precluded from considering issues raised for the first time in a reply brief where "the argument raised in the reply brief supplements an argument raised in a party's initial brief." *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003).  Aguirre's inclusion of additional witnesses in the list of those he argues his second trial counsel should have subpoenaed to refute Jennifer Ramey's testimony simply supplements the argument made in his initial brief because Aguirre argues that agent Nissen is simply another witness that should have been called to challenge Ramey's credibility.

"The decision not to call a witness is a 'virtually unchallengeable' decision of . . . strategy." *United States v. Staples*, 410 F.3d 484, 487 (8th Cir. 2005) (quoting *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997) *cert.denied*, 522 U.S. 1034 (1997)).

Aguirre's second trial counsel states, via affidavit, that "Eric Sandoval was a co-conspirator who had not yet been sentenced and it's this counsel's belief at this time that the determination was made that this would be detrimental to the client to call him as a witness." Affidavit at 2. Aguirre's second trial counsel also states, via affidavit, that with regard to Ashley Moller's testimony, he must also have determined that her testimony would be more damaging than helpful. Affidavit at 2. Further, with regard to Ashley Moller, Aguirre has attached a letter to his attorney, as an exhibit, in which he states, prior to his sentencing hearing, that he no longer wants Ashley Moller as a witness. *Pro Se* Reply Brief, Exhibit A-I at pg. 20. Moises Gonzalez was another co-conspirator and the boyfriend of Aguirre's sister. Sent. Trans. at 13. Lorena Salazar was a girlfriend of Aguirre's. Brief in Supp. of Amended Mot. at 8. James Schall was the attorney who represented Aguirre on his prior state charge. Addendum to Amended Mot. at 2. All of these witnesses, with the exception of his prior attorney, officer Lisa Kenny, and agent Nissen, would have had credibility problems simply by virtue of their relationships with Aguirre.

Further, and most importantly, Aguirre has not established that any of these witnesses were present on the occasion during which Jennifer Ramey testified that Aguirre possessed and displayed a gun. See Sent. Trans. at 26-27. Aguirre simply argues that these witnesses would have testified that they were familiar with him generally, saw him frequently during the relevant time period, and did not see him carry a weapon. *Pro Se* Reply Brief, at 15-19. In his *Pro Se* Reply Brief, Aguirre also alleges, for the first time, that agent Chris Nissen should have been subpoenaed to testify that none of these potential

22

witnesses who had been involved in prior "proffer interviews" had indicated during such interviews that Aguirre carried a weapon. *Pro Se* Reply Brief at 16. On this record, Aguirre has not established that his second trial counsel's conduct in failing to subpoena these witnesses, was outside "the wide range of reasonable professional assistance." *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005). The general testimony that Aguirre argues would have been offered by these witnesses would not have rebutted Ramey's testimony regarding the specific incident about which Ramey testified.

Aguirre also cannot demonstrate that he was prejudiced by his second trial counsel's failure to subpoena these witnesses. With regard to each of the witnesses, Aguirre must establish that he would have received a different punishment had the sentencing court heard the testimony in question. *See Garcia v. Bertsch*, 470 F.3d 748, 756 (8th Cir. 2006) (movant must "demonstrate a reasonable probability that he would have received a punishment other than [he did] had the sentencing court heard the testimony in question.") "The credibility of uncalled witnesses is a part of determining prejudice." *McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996). As stated above, most of these witnesses would have suffered from credibility issues and, again, Aguirre has not shown that any of these witnesses were present during the time that Jennifer Ramey testified she observed Aguirre in possession of a gun. Both because of credibility issues and simply because none of these witnesses were present at the time that Jennifer Ramey was, Aguirre cannot establish that he would have received a different punishment had I heard their testimony.

Because Aguirre has failed to demonstrate either that his second trial counsel provided ineffective assistance, or that he was prejudiced, his claim, on this ground, fails.

### 4. Inadequate cross examination at sentencing hearing

Aguirre claims that his second trial counsel failed to adequately refute Jennifer Ramey's testimony that she saw Aguirre with a gun during a drug transaction. Amended

Motion at 4.  Respondent states that Aguirre has offered no proof that there was evidence that would have refuted the testimony of the witness.  Response at 15.

Courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011)(citing *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001)).  Failure to impeach veracity on critical aspects of testimony, coupled with an inability to articulate a strategic reason for such failure, can fall below the threshold of professional competence required by *Strickland*. *United States v. Orr*, 636 F.3d 944, 953 (8th Cir. 2011).  However, a failure to impeach a witness at the sentencing hearing will only constitute ineffective assistance when the defendant can show that, "but for counsel's errors, a reasonable probability exists that the result of the sentencing would have been different." *Deltoro-Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010).

Jennifer Ramey testified at Aguirre's sentencing hearing that she saw Aguirre with a gun during a drug transaction.  Sent. Trans. at 26-27.  During direct examination, Jennifer Ramey testified that she had recently pled guilty to a first-degree controlled substance charge in the State of Minnesota.  Sent. Trans. at 20.  She testified that she had an agreement with the prosecutor in Minnesota with regard to that charge to complete drug court successfully in order to avoid being sent to prison.  Sent. Trans. at 21.  However, she also indicated on re-direct examination that she had no agreement with the Minnesota prosecutor's office with regard to testifying in Aguirre's case.  Sent. Trans. at 38.

Aguirre appears to allege that Jennifer Ramey's testimony was unreliable because of an agreement she had with the prosecution in Minnesota.  Mem. in Supp. of Amended Motion, at 16-18.  Aguirre appears to make this argument based on the fact that, after a search of Jennifer Ramey's address, she agreed to cooperate with law enforcement and made arrangements to purchase methamphetamine from Aguirre.  PSIR para. 17.  There

24

is nothing in the record, and Aguirre has offered nothing, to support the argument that Jennifer Ramey had an agreement to receive any kind of benefit in exchange for providing testimony regarding Aguirre's possession of a gun.   Although Aguirre's second trial counsel did not cross-examine Jennifer Ramey at length regarding any agreement with any prosecutor, the information regarding her own criminal involvement, which may have affected her credibility, had already been presented to me during direct examination and was evident in the PSIR.   Even after consideration of this information, I still considered Jennifer Ramey's testimony to be reliable.   Sent. Tran. at 43-44.

Here, Aguirre cannot establish prejudice because he cannot demonstrate that there is any reasonable probability that the result of the sentencing would have been different. *Id*.   Because Aguirre has not shown that he was prejudiced by any failure of his second trial counsel to cross-examine Jennifer Ramey, his claim, on this ground, fails.

### 5.    *Inadequate request for second psychological evaluation*

Aguirre argues that his second trial counsel provided ineffective assistance by failing to seek additional funds for an independent psychological evaluation and by failing to cite to controlling case law when presenting his motion for additional psychological testing. Amended Motion at 4. Respondent argues that governing law does not allow a defendant to choose his psychiatrist, nor does it establish a right to receive funds to hire one independently, and further argues that citation to the case suggested by Aguirre would not have changed the outcome of Aguirre's request.  Response at 21.

"[T]he State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). "This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id*.

"Where counsel has obtained the assistance of a qualified expert on the issue of the defendant's sanity and nothing has happened that should have alerted counsel to any reason why the expert's advice was inadequate, counsel has no obligation to shop for a better opinion." *Worthington v. Roper*, 631 F.3d 487, 501 (8th Cir. 2011) (citing *Marcrum v. Luebbers*, 509 F.3d 489, 511 (8th Cir. 2007); *Cf. Antwine v. Delo*, 54 F.3d 1357, 1365 (8th Cir. 1995) (Second evaluation ordered where interview for first evaluation was only 20 minutes long and first report concluded that behavior was merely drug-related when defendant had previously informed counsel that he had not taken drugs).

On June 9, 2008, by counsel, Aguirre filed, under seal, a Motion For Downward Departure and Variance (Crim. docket no. 65). Aguirre's motion was based, in part, on his "significant history of psychological problems." Crim. docket no. 65, at 1. Aguirre's motion relied on reports from psychological evaluations in September of 1993; September of 1995; November of 1995; July of 1996; and July of 1998. *See* Brief in Supp. of Mot., at 3. Aguirre argued for a downward departure due to diminished capacity pursuant to Section 5K2.13 of the sentencing guidelines. Brief in Supp. of Mot., at 5. On June 11, 2008, Aguirre's first trial counsel filed, under seal, a Motion For Psychological Evaluation. Crim. docket no. 75. This request was based on some of Aguirre's behavior while he was incarcerated at the Woodbury County jail pending sentencing in this matter and on a request for such an evaluation made by the government in the government's sentencing memorandum. *See* Crim. docket no 75, Ex. 1. On July 1, 2008, I granted Aguirre's Motion For Psychological Evaluation. *See* Crim. docket no. 79. On October 23, 2008, Aguirre's first trial counsel withdrew. *See* Crim. docket nos. 107 & 108. Aguirre's second trial counsel was appointed to represent him on October 24, 2008. *See* Crim. docket nos. 107 & 108.

On December 31, 2008, Aguirre's second trial counsel filed a Motion For Second Psychiatric Evaluation. Crim. docket no. 122. Aguirre argued that subsequent to the most recent testing ordered by the court, which occurred on ten different days throughout the summer of 2008, there were questions that still needed to be addressed about Aguirre's psychological state. Crim. docket no. 122, at 2-3. Specifically, Aguirre argued, by counsel, that the diagnosis of mild mental retardation and post-traumatic stress disorder needed further probing, since these possible diagnoses differed from anything that had appeared in the earlier diagnosis. Crim. docket no. 122, at 2. On December 31, 2008, I entered an Order (Crim. docket no. 123), denying Aguirre's Motion For Second Psychiatric Evaluation on the ground that Aguirre had failed to establish sufficient grounds to warrant a second evaluation.

Aguirre argues that, while his second trial counsel sought a second psychological evaluation, his counsel's performance was deficient because he did not request funds for an independent evaluation and did not cite to *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). Amended Motion at 4.

Aguirre received a thorough and appropriate evaluation by a competent psychiatrist that was, in fact, relied on by the defense in the presentation of the argument for a downward departure based on Aguirre's alleged diminished capacity. Sent. Trans. at 45. Aguirre received everything that *Ake v. Oklahoma* requires. Aguirre cannot demonstrate that his second trial counsel's conduct was not within the wide range of reasonable professional assistance when he failed to cite *Ake v. Oklahoma* and did not seek additional funds for an independent evaluation because citation to *Ake v. Oklahoma* would not have supported such a request in this case. Aguirre cannot show that his second trial counsel performed deficiently. *See Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To

satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.").

Because Aguirre has failed to show deficient performance by his second trial counsel, I do not need to proceed further with my analysis of Aguirre's ineffective assistance claim on this ground, and his claim fails. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (where movant failed to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel, the court does not need to proceed further in the *Strickland* analysis.).

### 6.     *Failure to fully present mental health issues*

Aguirre asserts that his second trial counsel provided ineffective assistance by failing to present mental and emotional health issues to the court during Aguirre's sentencing hearing. Amended Motion at 4. Aguirre argues that his second trial counsel failed to present evidence regarding his major depressive disorder, panic disorder, and intellectual deficits to the court during sentencing, which led to a denial of his motion for downward variance. Brief in Supp. of Amended Mot. at 15. Respondent does not address this issue.

The record refutes Aguirre's claim. Aguirre's first trial counsel filed a Motion For Downward Departure and Variance (Crim. docket no. 65), based, in part, on Aguirre's history of mental health disorders. At sentencing, Aguirre's second trial counsel argued for a departure based on Aguirre's history of mental health disorders as well as referring to the report from the evaluation for this case, which included the possibility of a panic disorder. Sent. Trans. at 45. Additionally, the court had all of the information regarding the state of Aguirre's mental health before it by virtue of the relevant sections of the  PSIR and the report from the evaluation in this case.

28

Aguirre has not demonstrated that the performance of his second trial counsel with regard to Aguirre's mental health history and status was deficient.  Because Aguirre has failed to show deficient performance by his second trial counsel, I do not need to proceed with my analysis of Aguirre's ineffective assistance claim on this ground.  *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003)(where movant failed to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel, the court does not need to proceed further in the *Strickland* analysis.).

### 7.    *Issues waived*

In addition to the issues discussed above, Aguirre asserts several claims in his *Pro Se* Reply Brief that were not raised in his initial motion and are not supplemental to his original arguments.  Aguirre, in his *Pro Se* Reply Brief, argues for the first time: (1) that his first trial counsel violated the attorney/client privilege by disclosing information related to drug quantity to the probation officer and that this disclosure adversely affected Aguirre's sentencing, (2) that his second trial counsel provided ineffective assistance by advising him to stipulate to a base offense level of 32 based on drug quantity, (3) that his second trial counsel provided ineffective assistance by failing to argue that Aguirre qualified for a reduction based on his role in the offense, and (4) that his second trial counsel provided ineffective assistance by failing to object to the calculation of criminal history points.  *Pro Se* Reply at 11 and 31.  Respondent argues that Aguirre waived these claims by raising them for the first time in his Reply.  Hearing Memo at 3 and 4.

I have previously ruled that "[a]n argument not raised until a reply brief is waived." *Gilster v. Primebank*, ___F. Supp.2d ____, 2012 WL (N.D. Iowa 2012).  I have done so on the basis that inclusion of a new argument in a reply is contrary to N.D. Iowa L.R. 7.1(g).  *See Armstrong v. Am. Pallet Leasing, Inc.*, 678 F. Supp.2d 827, 872 n. 19 (N.D. Iowa 2009) ("The inclusion of a new argument in a reply brief is improper as a matter of

motion practice in this court, and, in this circuit."). Local Rule 7.1(g), controlling the filing of a reply brief, states that such a brief will be allowed "to assert newly decided authority or to respond to new and unanticipated arguments made in the resistance."

The Eighth Circuit Court of Appeals generally applies this rule to cases pending on appeal, unless the appellant gives some reason for failing to raise and brief the issue in his opening brief. *Jenkins v. Winter*, 540 F.3d 742 (8th Cir. 2008). The Eighth Circuit Court of Appeals has also considered arguments raised for the first time in a reply brief where "the argument supplements an argument raised in a party's initial brief." *Barham v. Reliance Standard Life*, 441 F.3d 581, 584 (8th Cir. 2006) (citing *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003) (arguments in opening briefs will not be read narrowly to exclude issues raised in reply briefs).

Aguirre has not provided any reason for failing to raise and argue these issues in his opening brief. I also do not find that any of these arguments are merely supplements to the arguments raised in his initial brief. For these reasons, Aguirre has waived these arguments, and his claim that his first and second trial counsel provided ineffective assistance, on these grounds, therefore, fails.

### 8.   *Failure of probation officer*

Aguirre asserts that his second trial counsel provided ineffective assistance of counsel by failing to argue that the probation officer in his case failed to explain, or give notice of, the intent to recommend a sentence at the high end of the guideline range. *Pro Se* Reply at 11. Respondent argues that this claim is simply not cognizable. Hearing Memo at 5.

"Counsel's failure to raise meritless issues does not constitute ineffective assistance." *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010). Aguirre has cited to no authority to support the claim that a probation officer must provide notice to the

defendant that he or she will recommend a sentence at the high end of a guideline range, and I find none. This would have been a meritless issue for his second trial counsel to raise, therefore, Aguirre's claim of ineffective assistance, on this ground, fails.

### 9.    *Demeanor*

Aguirre asserts that his second trial counsel provided ineffective assistance by failing to maintain a proper demeanor during the sentencing hearing. *Pro Se* Reply at 34. Respondent does not address this issue.

Aguirre states that his second trial counsel behaved unprofessionally by making the statement, "The court has essentially ruled in favor of the government on every single issue, so consequently. . . ." *Pro Se* Reply at 34. The record shows that, while this comment did prompt me to question second trial counsel's meaning, Aguirre's second trial counsel clarified his statement by explaining that he was referring to the fact that my prior rulings had increased the guideline range, therefore, arguably, making a sentence at the low end of a higher guideline range, satisfactory, under the 3553(a) factors. Sent. Trans. at 56. I do not, from this exchange, conclude that Aguirre's second trial counsel behaved unprofessionally during Aguirre's sentencing.

Because Aguirre has not demonstrated that his second trial counsel performed deficiently by allegedly acting unprofessionally during Aguirre's sentencing hearing, I do not need to proceed with my analysis of Aguirre's ineffective assistance claim on this ground, and it, therefore, fails. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (where movant failed to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel, the court does not need to proceed further in the *Strickland* analysis.).

### D.  Certificate Of Appealability

Denial of Aguirre's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein.   The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> * * *
>
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b).   To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569.   Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:   The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

I find that Aguirre has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find my assessment of Aguirre's claims debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Aguirre does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

### III. CONCLUSION

Upon the foregoing, Aguirre's Motion Under 28 U.S.C. § 2255 (Civ. docket no. 1), is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 27th day of November, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA